The next case call for argument is in the matter of Joseph H. Counsel, whenever you're ready, you may proceed. Would you please report? Pardon? Would you please report? Sure. Counsel? The panel is not contagious, I promise. Not from this day forward. My name is Penelope Smith, and I'm one of the attorneys who's representing Joseph M. in this involuntary commitment proceeding that's before the court this morning. Just very briefly, the facts of this case are that Mr. M. Joseph was admitted to Chester Mental Health Center in November of 2005, and he had been there continuously ever since as of the November 8th hearing that is at issue in this cause. He had engaged in no aggressive behavior for a year and a half at the time of the hearing. He was partially wheel-bound due to some type of a spinal disease, and he was – Did you say he was partially wheel-bound? Partially wheelchair-bound due to some type of a spinal disease. So he'd be in and out of the wheelchair. He would be in and out, yes. Okay. He was not a behavior problem. He hadn't had any seclusion or restraint or what we call emergency medications, medications that are given on an emergency basis when someone acts out without a court order. He had appropriate behavior in his social interactions with his other peers were appropriate. He participated in school. He was active in recreational events to the extent of his ability to do so. While he was under a court order to take psychotropic medication since, I'm sorry, 2006, there was a note in his treatment plan that the nursing staff commented that he always willingly took his medication. It is our contention today that as this court found in Philip E. that Joseph M. was denied due process at this hearing. There was only one witness for the state, and that was a social worker who wasn't involved in his treatment and who had not executed one of the certificates for his admission. As in Philip E., the certificates were very voluminous. They contained a lot of facts. They contained a lot of information that had that been admitted into evidence at the hearing, it's possible that there could have been sufficient evidence to not violate Joseph M.'s right to due process, but that wasn't the case. She had no personal, the social worker was a female, and she had no personal observations of Joseph M. She was asked just several leading questions. Do you have an opinion on whether Joseph M. is subject to involuntary admission? She said, yes, I have an opinion. And they said, what is that opinion? The state said, what is that opinion? And she said that he is subject to involuntary admission. Were they objected to? No, they were not. They were not. There were a couple of other leading questions. Is it your opinion that he cannot provide for his basic physical needs so as to protect himself from harm? And the answer to that question was yes. And is he reasonably expected to inflict serious physical harm upon himself or another in the near future? And she said yes. There was, to support the finding that someone is unable to provide for their basic physical needs, there has to be testimony regarding that person's ability to provide food, shelter, clothing, get medical care, function in society, have an understanding or an appreciation for money as a means of sustenance. And there was no such testimony in here. The only testimony that we had on that was just her bare opinion that he was unable to provide for his basic physical needs. Would you address the notice of appeal question? I sure would. The notice of appeal was prepared by Joseph M. himself. And basically it said, I, Joseph M., hereby appeal from the order of the Randolph County Circuit Court, the 20th Judicial Circuit, that was entered on November 19, 2008. I think that's the extent of his notice of appeal. And it's our contention today, Your Honor, that that is sufficient to confer jurisdiction on the appellate court because it informed the State of the fact that he was seeking review from a higher court of that decision. And that is the stated purpose of a notice of appeal. It doesn't matter that it wasn't served on the State. Well, the notice of appeal said, I would like to. Is that sufficient? Your Honor, I believe it is because the Circuit Court acted upon that, noticed that document that was filed, and went ahead and appointed appellate counsel for Joseph M. I believe that the pleadings of both mentally handicapped people and paupers, which I believe Joseph M. was both, are supposed to be liberally construed and for that reason it was all he knew to do to try to get the higher court to review the decision at the trial court. He didn't have anyone assisting him. I know that the State has indicated in its brief that the Guardianship and Advocacy Commission should have assisted him in that process or we should have come back and noticed that it might be deemed to be insufficient and that we should have filed one of our own. However, we don't get the record right away, and so we were unaware of the contents of the notice of appeal. And, in fact, we never even questioned it. It was only until the State brought it up that it's not in our initial brief. It's only in our reply brief. So I think that it was filed within 30 days after the judgment was entered. I think it was filed on November 26th, and the hearing was on November 19th, so it was timely. You get into the issue of whether it's sufficient when there are additional parties or when there are additional judgments entered on the same day, and that is not the case. This is the only judgment that was entered on November 19th was the one finding him subject to involuntary admission. Not only was Joseph M. denied due process because there wasn't sufficient testimony to support the conclusion that he was a person subject to involuntary admission, he's also denied due process because the court did not order, assuming that the commitment was appropriate, the court did not order the least restrictive alternative for treatment. It's as though the court presumed that once Joseph M. was found subject to involuntary admission, that hospitalization at Chester was the only possible outcome. I think this is similar to a case that was decided in the first district, I believe. It was Angel S., and there the testimony was a lot more blatant than it was in this case, and the expert indicated we never do anything other than hospitalize people, and I think that that is the underlying current of the judgment that was entered in this case, is that if you're found subject to involuntary admission and you're a Chester recipient, you stay at Chester. I would like to address briefly the lack of information about family or friends or an investigation of that. The statute in question 3-601 requires the petition to state the names and addresses of family members or friends or of people who might know information if that information isn't available, and if you can't get that information, you're supposed to indicate that a diligent inquiry was made and state what that inquiry was. In this particular case, that section of the petition was simply left blank, and it's unfortunate because the hospital was fully aware that Joseph M.'s sister and brother, that he kept in close contact with them by the telephone. Now, while the treatment plan mentions his sister and brother, and it's possible that you can show compliance with 3-601 in some place other than in the petition, it does not indicate their names or their addresses, and I think that this omission deprived Joseph M. of proper counsel because his attorney could have possibly had his attorney known that his brother and sister were in close contact with him, and the attorney could have contacted them and found out if they had any information that might assist Joseph M. in his involuntary commitment, even to the extent of possibly taking him into their care in custody, which is an alternative that is possible under 3-811. This Court has never ruled on that particular provision of the Mental Health Code, and I think that there's a lot of other cases that are somewhat conflicting, and I think that it would help the general mental health attorney population to be able to have a clear interpretation of what is necessary to meet that requirement and what does not meet the requirement. Just very briefly, I would like to indicate that I don't believe that any of the issues that are before the Court today are moved. I think they all fall within the public interest exception. The questions presented are of a public nature, and there's a need for an authoritative determination for future guidance of public officers and if there's a likelihood of future recurrence of the questions. And I believe that this Court found in James S. in the failure to make findings a fact that this movement's exception applied. And Michael H. Waver of the Court hearing recently, this Court ruled that that fell under the public interest exception and as well as fell under the due process as it applies to clear, convincing, and least restrictive alternatives. Very briefly, I think that the order that was entered in this case simply indicated that there's a chance of there's some evidence of some severe delusions and that he is a risk to the community and himself if he is not involuntarily medicated. That does not meet the standard that this Court set forth in James S. S23-816. There must be specific findings of facts that are made on the record. This particular finding does not indicate whether the Court found Joseph M. unable to provide for his basic physical needs or whether it found him to be a danger to himself or others. So it's not sufficient to apprise people who are looking at it at a later date to know what, in fact, the Court's findings were. So for those reasons, I would ask this Court to reverse the judgment that was entered against Joseph M. on November 19, 2008. Thank you very much. Thank you, Counsel. Counsel? I'd like to start out by talking about three related issues. The notice of appeal issue, the mootness issue, and the waiver issue. They're all related because it's our position that the Guardianship and Advocacy Commission in this case has acted in a way which is contrary to law, contrary to the interests of the court system, and most important of all, directly contrary to the interests of its client. Now, no matter what you decide today, it's not going to make any difference to Joseph M. The case is moot. If he's going to be committed in the future, it's going to be at a different hearing with a different witness, different evidence concerning his compliance with medication, and so forth. So, you know, all the heartfelt complaints about how bad the trial court did in this case is, you know, literally moot as well as legally moot. There's nothing you can do today that's going to help Joseph M. There was a way in which the Guardianship and Advocacy Commission could have helped Joseph M., but they refused to do it, and their refusal was contrary to principles of Illinois law. They could have gone back into the trial court and filed a motion to reconsider. Are they required to do that, Mr. Sweeney? They are not required to do that, but they are required to file a valid notice of appeal if they want to go to this court, to honor this court with a moot case. And they are required to raise procedural arguments in the trial court before they bring them up to this court, so they're not. They have to raise them some way, and, of course, the best way to do it would have been to file a motion to reconsider. The Illinois Supreme Court specifically ruled that you don't reverse a finding in a mental health case because of an alleged procedural defect, which could have been raised in the trial court, could have been simply corrected if it had been raised in the trial court, and made no difference anyway. So the waiver rule applies in mental health cases just like in other cases. Now, here's the situation. Joseph M. writes a letter to the court. It doesn't pretend to be a notice of appeal. It isn't labeled notice of appeal. Nothing about it indicates that he wants it to be considered a notice of appeal. It's a request that he have an attorney appointed for him to proceed with an appeal. I mean, it has none of the characteristics of a notice of appeal as defined by the Illinois Supreme Court in Rule 303. It's not a title notice of appeal. It doesn't name the court in which the appeal is taken. It doesn't contain the title of the case. It doesn't specify the judgment appealed from. It isn't signed by anybody, and it wasn't served on the people, so it certainly didn't tell us he wanted to appeal. Now, with the exception of the last requirement of service, notices of appeal have been found inadequate in published decisions because of those very defects. So anyway, the Judiciary Commission is appointed 11 days after judgment. What should they do? What is their ethical obligation to their client? What is their obligation to the legal system? Their obligation to the legal system is to file a valid notice of appeal. Their obligation to their client is to go back into court and try to get the decision reversed because of the alleged defects, which they're now arguing in a moot case before this court. That's not what they do. Counsel here has claimed that they didn't know about the notice of appeal. Well, 19 days after judgment, a week after their appointment, they filed a docketing statement. I mean, you can't tell me that they filed a docketing statement without looking at the court file. So I think counsel is in error in saying that they never saw the notice of appeal in time to correct it. At any rate, the Supreme Court rules give them up to 60 days to withdraw the notice of appeal and presumably go back into court, file a motion to reconsider, to file a valid notice of appeal. So I'm not arguing a technicality on the notice of appeal here. I'm saying that the Guardianship and Advocacy Commission, we have a strong message from this court that they're representing clients, not just collecting paychecks from the state, and their job is to go back into the court and file it. The same court which has repeatedly refused to adhere to certain parts of the statute. I mean, obviously we're hearing these same cases over and over and over from Randolph County. Well, maybe the reason is that the Guardianship and Advocacy Commission has come up to this court in moot cases and hasn't gone to the court and pointed out to the court, this is what you have to do under the statute. Maybe the Guardianship and Advocacy Commission has something to do with that. So send them a message saying, represent clients. Don't just go through the motions. Now, and as I pointed out, this case is moot, like all cases are moot. That's why the GAC should try to get decisions where it matters, instead of in this court where it doesn't matter to their clients. Now, public interest exception. I admit that if you're going to issue a published decision in this case, that would apply. I strongly suspect that you're going to Rule 23 it, because every issue that's raised in this case depends on general principles of law which really aren't in dispute. And by definition, a Rule 23 order can't fall within the public interest exception because it's not a precedent. Now, collateral consequences. This respondent has been committed to mental institutions on six different occasions. That is five times even before his current admission. Of course, in his current admission, he's been repeatedly found in need of involuntary admission. He has a pending charge of aggravated criminal sexual assault, in which he's been found unfit to stand trial. And apparently he's never gone back into court and claimed he's fit to stand trial, which shows you how mentally competent he is. Obviously, there are no collateral consequences to him from yet another finding that he needs to be at Chester for another six months. So the only possible exception to the mootness doctrine should apply. And remember, the Illinois Supreme Court in Alfred H. H. says you have to. It goes out of moot unless one of these exceptions applies. Is it capable of repetition yet evading review? Well, I mean, I don't know what's happened to Alfred H. H. in the year that it's taken this case to get to oral argument. But if there's been another hearing on involuntary admission, I can bet you it involved a different witness, different evidence concerning his compliance with medication, different evidence concerning his progress of any towards a less restrictive setting. All the issues in this case are specific to this particular hearing. I mean, it's capable of repetition in the sense that this is a person who's obviously going to be in mental hospitals again in the future, just as he has six times in the past. But the specific issues arising out of this case are not going to recur in the same form. So there's no exception to the mootness doctrine that applies. So there's no notice of appeal. The case even got here through a misuse of the justice system and ignoring the interests of the client. And the case is moot and no exception applies. So you don't even have to get to the merits. But on the merits, again, arguments on mental health cases from the guardianship and advocacy commission tend to be extremely abstract and not really related to the real world of mental illness and mentally ill people. Now, as I mentioned, this is not this respondent's first admission to a mental hospital. This is his sixth. And it is not the first time he's been found in need of continuing treatment. He's been at the mental health center for quite some time. He got to the mental health center not because someone thought he was mentally ill, but because a criminal court judge found him unfit to stand trial on a charge of aggravated criminal sexual assault. So this case is moot. But if it wasn't moot, is this the kind of person that a responsible judge is going to rule recovered and fit to be released into the community? Mr. Sweeney, does that mean just rubber stamp these commitments? Of course not. Well, that's what you appear to be arguing. What I'm saying, I mean, these are constitutional curtailments of liberty. I mean, they can't you come in and argue that these people are obviously mentally ill and they can't be let go because they'll harm the community or themselves. Isn't that why we have meaningful hearings? Respectfully, Your Honor, that's not what I'm arguing. I'm arguing evidence. Evidence. That's what the purpose of the hearing are for. The fact that this is a sixth admission is evidence of mental illness, dangerousness, and an inability to take care of himself. The fact that he was found in need of admission to Chester and has repeatedly been found in need of continued admission, that's evidence. Now, the fact that he has been found in a fit-to-stand trial on charges of aggravated criminal sexual assault is evidence both of mental illness and dangerousness. So I'm not arguing that he should be locked up without evidence. I am arguing that he is dangerous on the basis of the evidence presented to the trial court. Now, the evidence is that he has been repeatedly ordered to take psychotropic medication. That means that a judge has found repeatedly that he is unable to understand the nature of his mental illness and that he would be dangerous without psychotropic medication. The evidence is that he specifically states that he will not take the psychotropic medication if he is released. Now, it is quite true that you can't commit someone to a mental hospital simply because of refusal to take psychotropic medication. But if a person refuses to take it, and this man says he will if he is under a court order and in custody, then you have to evaluate his dangerousness according to his unmedicated condition. And the uncontradicted expert testimony is that if he is released, and if he refuses to take the psychotropic medication like he says he will refuse to take it, then he's dangerous. That's the expert testimony, and it's abundantly corroborated by this man's history. How could you possibly have a stronger case where you have expert testimony that he's mentally ill, expert testimony that he'll be dangerous if he's released, and his entire record shows that that expert testimony is completely accurate. Now, as for the issue of least restrictive facility, there was testimony at the hearing that there was a plan to transfer him to a less restrictive facility, but that in order for that to work, he would have to be compliant with medication. The trial court judge at the end of the hearing specifically found that transfer to a less restrictive facility, that Chester was the least restrictive facility that was appropriate at the present time. Again, oh, incidentally, I don't know where counsel for appellant gets the information that this person is partially confined to a wheelchair. Certainly wasn't in evidence at the hearing, and therefore it can't be considered reviewing the judge's finding. It's nowhere in my notes, so I would be interested to find out on rebuttal where that assertion comes from. So, I mean, Chester is a facility designed for people who used to be called criminally insane, like a person who's been found not fit to stand trial on a charge of aggravated criminal sexual assault. Nevertheless, there was a plan to transfer Joseph M. to a less restrictive facility. He, in effect, rejected it by refusing to promise to be compliant with medication if transferred to a facility where involuntary admission of such medication would be difficult or impossible. On the issue concerning the family of this respondent, as counsel pointed out, there's a reference to family in the treatment plan. If there had been an objection in the trial court or a motion to reconsider, this issue could have been corrected in, like, ten seconds. However, there are three precedents directly on point against respondent on this issue, saying that in the absence of a showing of prejudice, the failure to name family members in the petition is not reversible error. I mean, in any other case, you would say if you want to object to the complaint or the charging document, you have to do it before trial. It's the law in this case as well. It's particularly the law in this case because the requirement that members of the family be named in the petition appears only in the language about original petitions and is relevant only to original petitions. Because when you take someone off the street and try to admit them to a mental hospital, then it's obviously highly relevant that their family be contacted. The legal requirement presumably applies also to petitions for continuing admission. It's almost completely irrelevant because by that time, as in this case, the family of the respondent knows where he or she is. Now, as to the findings, again, we come back to the question of mootness, of waiver. I mean, why was this brought to the attention of the trial judge? The Guardianship and Advocacy Commission got this case 11 days after judgment. The written order, they certainly had a copy of the written order, which does specifically state that this respondent is unable to care for himself, dangerous to himself and others, and mentally ill. Anyway, the language about findings appears in the section of the mental health bill dealing with appeals, and the reason for the findings is to enable this court to review the judgment. Really, the only contested issue at the hearing was whether Chester was the least restrictive facility for this respondent because no one who wasn't mentally ill themselves could contemplate immediately releasing him under the street. And the trial judge did make a specific finding on that issue, finding that the current commitment was the least restrictive facility, which was currently appropriate for this respondent. Now, I understand this court's frustration with the kind of records you get in mental health cases. They're nice for me because I can review them in a hurry, but sometimes they're a bit cursory in the light of the language of the mental health bill. But, again, we have a legal system with procedures that attorneys are supposed to follow. And if you have an alleged error, raise it in the trial court. Give the judge a chance to correct it. Don't go directly to the appellate court and ask them to review it, particularly in a moot case, which is going to make no practical difference to anyone. So for these reasons, all I'm asking you to do is enforce the rules. Enforce the rules concerning notice of appeal. Enforce the rules concerning raising issues in the trial court. And enforce the rules concerning mootness. And I believe that if you do enforce those rules, this appeal will be dismissed or the finding will be affirmed. Thank you, counsel. Counsel? Thank you. C-11 and C-17. C-11 being one of the certificates and C-17 being page two of the treatment plan indicates that Mr. M had spondylosis. And the definition of spondylosis was obtained from the Encyclopedia Britannica. And it's a degenerative disease of the spine. So that's where that came from. It's interesting that counsel is setting up a new rule for mentally ill respondents that before they're entitled to appellate review, they must first file a motion to reconsider. I think he's just trying to go practical with you there. I'm sorry? Isn't he just trying to be more practical? I mean, what good is it if you wait until after it's past 30 days? What good has it done you? Or after he's quit taking the psychotropic drugs. Your Honor, the outcome of this particular case before this court today could possibly help other people. It could possibly help Joseph. It won't help this client is what you're saying. It could possibly help him, yes, Your Honor. If he has another appeal? Or another hearing on him at another time? Yes, Your Honor. He has been under a medication order continuously since 2006, so he's never been given a chance to prove that he could possibly take the medication on his own. He had to be compliant with medication to go to a less restrictive facility, yet if he's under a continuous order, he's given no chance to show that he could take it without a court order. I don't believe that a simple 10-second correction of the petition to list Joseph M.'s brother and sister could have corrected the problem in this case. I think the court can take judicial notice of the fact that whoever's listed on the petition gets a notice of hearing, and that would not have gotten his brother or his sister present at his involuntary commitment hearing. The notice of appeal is sufficient if the opposite party is not pregnant. And I think that the state's adequate response to all of the appellant's claims in its brief delies any claim that it was prejudiced at all by the notice of appeal in this case. Yes, it's true that we did file the docketing statement as required 14 days after the notice of appeal was filed. However, unlike the state, we're not located in Mount Vernon, and we must rely on the mail to file that. We had never even seen the court file until we got a copy of it from the clerk. I admit to the court today that the collateral consequences exception does not apply, but I think that the public interest exception clearly applies. And finally, the state is saying that since he's had six prior commitments, we can just forget about his rights. I think what we should do is wonder what the quality of those commitments were. And it's probably the same as it was in this case, and the same that this court has seen in other Randolph County mental health cases, and that this is the first time that any of his claims have been heard by this court. So I don't think that he should be ruled out of getting a favorable disposition because he's had six prior commitments. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case.